Vincent Riggs, Fayette Circuit Clerk
120 N. Limestone, Room C-103
Lexington, KY 40507-1152

JANET M. NORTON
2701 EASTPOINT PARKWAY
LOUISVILLE, KY 40223

Package:000001 of 000036

# KCOJ eFiling Cover Sheet

Case Number: 20-CI-03419

Envelope Number: 2927288

Package Retrieval Number: 292728820224866@00000937633

Service by: Certified Mail

Service Fee: $ 0.00

Postage Fee: $ 13.40

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000001 of 000036

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice Courts.ky.gov

CR 4.02; Cr Official Form 1

# CIVIL SUMMONS

Case #: **20-CI-03419**
Court: **CIRCUIT**
County: **FAYETTE**

*Plantiff,* **THOMAS, M.D., RAMON VS. BAPTIST HEALTH MEDICAL GROUP, INC.,** *Defendant*

TO: **JANET M. NORTON**
**2701 EASTPOINT PARKWAY**
**LOUISVILLE, KY 40223**

Memo: Related party is BAPTIST HEALTH MEDICAL GROUP, INC.

The Commonwealth of Kentucky to Defendant:
**BAPTIST HEALTH MEDICAL GROUP, INC.**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Vincent Riggs

Fayette Circuit Clerk
Date: **11/11/2020**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

Summons ID: 292728820224866@00000937633
CIRCUIT: 20-CI-03419 Certified Mail
THOMAS, M.D., RAMON VS. BAPTIST HEALTH MEDICAL GROUP, INC.

Package:000002 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000002 of 000036

*FILED ELECTRONICALLY*
COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO. _______________

RAMON THOMAS, M.D. PLAINTIFF

v. **COMPLAINT**

BAPTIST HEALTH MEDICAL GROUP, INC. DEFENDANT

Registered Agent: Janet M. Norton
2701 Eastpoint Parkway
Louisville, Kentucky 40223

* * * * *

Comes Ramon Thomas, M.D. ("Dr. Thomas"), by counsel, and for his Complaint against Baptist Health Medical Group, Inc. ("BHMG"), and does hereby state as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to KRS 344.450 and other applicable law.

2. Venue is proper in this Court because the events giving rise to this action occurred in Lexington, Kentucky, and pursuant to the employment agreement described below.

## FACTS

3. Dr. Thomas is an African American male who was over 40 years of age at all times relevant to this Complaint.

4. Dr. Thomas is Board Certified in obstetrics and gynecology ("OBGYN").

5. Dr. Thomas is licensed to practice medicine in Kentucky by the Kentucky Medical Licensure Board.

Package:000003 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000003 of 000036

6.    Dr. Thomas executed a Physician Employment Agreement with BHMG on January 18, 2017 ("PEA"), a true copy of which is attached as **Exhibit A**.  The PEA contains the following relevant provisions:

    a.  The term of the PEA began on March 6, 2017, and automatically extended for successive one-year terms;

    b.  Dr. Thomas's compensation is set forth in Exhibit B of the PEA which sets his annual base compensation at $300,000 per year; he received an annual productivity bonus compensation; and he was eligible for a quality incentive bonus of up to $30,000 per year, along with other benefits that were available to all full-time employees of BHMG.  His maximum annual compensation with salary and quality and wRVU bonuses was $452,646;

    c.  BHMG agreed to provide, at its cost, professional liability coverage;

    d.  BHMG had the right to terminate Dr. Thomas' employment for cause upon the occurrence of certain events, none of which are applicable here;

    e.  Either party had the right to terminate the PEA by giving sixty (60) days' written notice to the other; and

    f.  Any dispute regarding the PEA is to be litigated in a state or federal court in the county where the hospital in which Dr. Thomas is practicing is located.

7.    For the entire period of his employment, Dr. Thomas provided services to the patients of BHMG at Central Baptist Hospital ("the Hospital") in Fayette County, Kentucky.

8.    Other physicians employed by BHMG and providing OBGYN services to patients at the Hospital when Dr. Thomas was hired included: John Voss, M.D., a Caucasian male over 40 years of age ("Dr. Voss"); Brad Youkillis, M.D., a Caucasian male over 40 years of age ("Dr.

Package:000004 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000004 of 000036

Youkillis"); Blake Bradley, M.D., a Caucasian male over 40 years of age ("Dr. Bradley"); and James O'Neill, M.D., a Caucasian male over 70 years of age ("Dr. O'Neill").

    9.    In January 2018, Dr. Voss announced his retirement.

    10.    The OBGYN physicians at the Hospital were told by Hospital Administration that only females were to be interviewed or hired to replace Dr. Voss.

    11.    Karen Hill ("Ms. Hill"), the Chief Nurse Operator and COO at the Hospital, was responsible for interviewing and hiring the replacement OBGYNs. Ms. Hill is a Caucasian female.

    12.    In March 2018, the Hospital's search for the replacement for Dr. Voss began in earnest.

    13.    Only two viable candidates for the replacement of Dr. Voss were identified, both of whom were Caucasian females under 40 years of age.

    14.    In April 2018, the OBGYN physicians were informed by Administration at the Hospital that the Hospital intended to hire both female candidates.

    15.    Ms. Hill sent an email to Dr. Youkillis after a notice of retirement was provided by Dr. Voss that the next OBGYN to be hired had to be a female.

    16.    Dr. Youkillis and Dr. Thomas expressed concern to Administration on the negative impact on their practices from hiring two new OBGYNs, since a portion of the physicians' compensation was based on the number of wRVUs earned, which directly relates to the number of patients each physician has. Those concerns were set forth in emails written by Dr. Youkillis to Douglas Reed (a Regional VP for BHMG), Stephen Heet, M.D. and Ms. Hill.

    17.    In August 2018, BHMG hired Mary Beth Baylon, M.D. ("Dr. Baylon") to provide OBGYN services at the Hospital. Dr. Baylon is a Caucasian female believed to be under the age of 40 at the time she was hired.

Package:000005 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000005 of 000036

18.     In October 2018, BHMG hired Claire Fish, DO ("Dr. Fish") to provide OBGYN services at the Hospital.  Dr. Fish is a Caucasian female believed to be under the age of 40 at the time she was hired.

19.     On October 10, 2019, BHMG sent a letter to Dr. Thomas terminating his employment ("Letter"), attached as **Exhibit B.**  The Letter stated that the termination was pursuant to 9.d of the PEA, which allowed either party to terminate it without cause, with a 60-day notice to the other.  Section 9.d of the PEA states in pertinent part:

> Upon no less than sixty (60) days' written notice . . . this Agreement may be terminated by either party, for any reason.

20.     In that 9.d of the PEA requires sixty (60) days' notice prior to the termination of Dr. Thomas, the Letter states "you will not be scheduled by Baptist to provide any further services under the Agreement."

21.     By prohibiting Dr. Thomas from working the sixty (60) days that remained in the PEA's term after notice was given in the Letter, BHMG caused him to lose pay both through his quality incentive bonus and his productivity bonus.

22.     Prior to receipt of the Letter, Dr. Thomas had a conversation with Greg Cooper, M.D. ("Dr. Cooper"), who told Dr. Thomas he would be receiving a notice of termination of his employment.  When Dr. Thomas asked for a reason, he was told by Dr. Cooper "because you are not the right fit".

23.     Promptly after being informed by Dr. Cooper that he was being terminated, Dr. Thomas delivered a letter to Dr. Isaac Myers, II dated October 7, 2019 in which he expressed astonishment as to "where this decision has arisen from" and asking for a reconsideration allowing him to remain employed by BHMG (attached as **Exhibit C**).

Package:000006 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000006 of 000036

24. As a result of Dr. Thomas' discharge, there are no African Americans employed by BHMG to provide OBGYN services at the Hospital.

25. Upon information and belief, there are very few African Americans employed by BHMG to provide any other services to patients at the Hospital.

26. After his discharge, Dr. Thomas filed a complaint against BHMG with the EEOC, which declined to pursue his claim and issued him a right to sue letter dated August 18, 2020.

**COUNT I**
**VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT**

27. Each of the foregoing allegations is incorporated as if fully set forth herein.

28. KRS 344.040 makes it an unlawful practice for an employer to discharge any individual because of the individual's age of over 40, because of their sex and because of their race.

29. Dr. Thomas was discharged by BHMG because he is over 40 years of age, because of his race, and because of his sex.

30. As a result of BHMG's discrimination against him, Dr. Thomas has suffered damages in excess of the jurisdictional limits of the Court.

**COUNT II**
**AGE DISCRIMINATION AND EMPLOYMENT ACT VIOLATION**

31. Each of the foregoing allegations is incorporated as if fully set forth herein.

32. The Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., prohibits discrimination of an employee who is at least forty (40) years of age on the basis of age.

33. Dr. Thomas, a male over 40 years of age and an African American, was replaced by two females who are under 40 years of age and Caucasian.

Package:000007 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000007 of 000036

34. Because Dr. Thomas was discharged because he is over 40 years of age, he has suffered damages in excess of the jurisdictional limits of the Court.

35. BHMG has acted willfully in discharging Dr. Thomas on the basis of his age, and Dr. Thomas is therefore entitled to recover liquidated damages pursuant to the ADEA.

## COUNT III
## VIOLATION OF THE U. S. CIVIL RIGHTS ACT

36. Each of the foregoing allegations is incorporated as if fully set forth herein.

37. The U. S. Civil Rights Act, 42 U.S.C. § 2000e, et seq. prohibits the discrimination against an employee on the basis of gender, gender plus age, race, and race plus age.

38. Dr. Thomas was fired and then replaced by two females who are under 40 years of age and Caucasian.

39. Numerous circumstances exist to show that BHMG has discriminated against Dr. Thomas on the basis of his gender, including, but not limited to, the fact that he is more qualified than one or both of the two females who replaced him, that the individual responsible for interviewing and hiring his replacement(s) is female, that only females were considered when the new OBYNs were hired and, during the period Dr. Thomas worked with Dr. Baylon and Dr. Fish, his production far exceeded their production.

40. Dr. Thomas was discharged in substantial part because he is an African American, male, and over the age of 40.

41. Dr. Thomas has suffered damages in excess of the jurisdictional limits of the Court as a result.

Package: 000008 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000008 of 000036

**COUNT IV**
**ATTORNEY'S FEES**

42. Each of the foregoing allegations is incorporated as if fully set forth herein.

43. If Dr. Thomas prevails in this action, the KCRA, the ADEA, and Title VII permit this Court to award him attorney's fees.

44. As a result of BHMG's violation of KCRA, the ADEA, and Title VII, Dr. Thomas has incurred and will continue to incur attorney's fees.

45. As a result of its violation of law, BHMG is obligated to compensate Dr. Thomas for his attorney's fees, which will be in an amount of the jurisdictional limits of the Court.

**COUNT V**
**PUNITIVE DAMAGES**

46. Each of the foregoing allegations is incorporated as if fully set forth herein.

47. The actions taken by BHMG were taken for a wrongful purpose and with the intent of harming Dr. Thomas.

48. The KCRA and Title VII provide for the award of punitive damages.

49. The actions taken by BHMG have been intentional and malicious, and/or reckless, as defined by common law and/or statute and have had a sufficiently detrimental impact on Dr. Thomas that he is entitled to recover punitive damages in an amount in excess of the jurisdictional limits of the Court.

WHEREFORE, Dr. Thomas demands a judgment in his favor on all counts, an award of damages in an amount in excess of the jurisdictional limits of the Court, an award of liquidated and punitive damages, a trial by jury, his attorney's fees and costs, and all other relief to which he may appear entitled.

Package:000009 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000009 of 000036

MILLER, GRIFFIN & MARKS, P.S.C.
271 W. Short Street, Suite 600
Lexington, Kentucky 40507
Telephone: (859) 255-6676
Facsimile: (859) 259-1562

By: *Thomas W. Miller*

THOMAS W. MILLER
twm@kentuckylaw.com
ELIZABETH C. WOODFORD
ewoodford@kentuckylaw.com

ATTORNEYS FOR PLAINTIFF

F:\Share\TWM\CASES\Thomas, Ramon\Complaint-Final.docx

Package:000010 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000010 of 000036

# PHYSICIAN EMPLOYMENT AGREEMENT

**THIS PHYSICIAN EMPLOYMENT AGREEMENT** ("Agreement") is by and between **BAPTIST HEALTH MEDICAL GROUP, INC.**, a Kentucky nonprofit corporation ("Baptist"), and **RAMON THOMAS, M.D.**, a physician duly licensed to practice medicine in the Commonwealth of Kentucky ("Physician").

**WITNESSETH:**

**WHEREAS**, in furtherance of its charitable mission, and with the expectation of providing a public and community benefit, Baptist has created and established a practice located at 1720 Nicholasville Road, Suite 411, in Lexington, Kentucky ("Practice") to provide obstetrics, gynecology and related services ("Services") in a manner consistent with Baptist's and Baptist Healthcare System, Inc.'s ("BHS") charitable and health care missions; and

**WHEREAS**, Physician is board certified in obstetrics and gynecology, and Physician desires to provide Baptist with the benefit of Physician's knowledge, experience, Services and patient relations, and agrees to render such Services in accordance with the policies of Baptist and BHS, subject to the terms and conditions of this Agreement; and

**NOW, THEREFORE**, in consideration of the premises and covenants contained herein and intending to be legally bound hereby, the parties agree as follows:

1. **Employment**. Baptist hereby employs Physician to perform the Services, and Physician hereby accepts such employment upon all of the terms and conditions set forth herein. Anything herein to the contrary notwithstanding, Physician's employment and this Agreement are conditioned upon and shall be of no force or effect until: (a) Physician's successful completion of Baptist's pre-employment screening process, including but not limited to criminal and background checks, reference checks, drug screening tests, credentialing, malpractice and history review; and (b) approval of this Agreement by the Baptist Board of Directors, if applicable.

(RT) [initials] 2/9/2017

2. **Term**. The term of this Agreement shall be for a period of one (1) year, beginning on ~~May 1, 2017~~ MARCH 6, 2017 (the "Effective Date"), and continuing through ~~April 30, 2018~~ MARCH 5, 2018 (RT) [initials] 2/9/2017, subject to earlier termination as set forth herein (the "Initial Term"). Thereafter, this Agreement shall automatically renew for successive one (1) year terms (each a "Renewal Term"), subject to earlier termination as set forth herein. The Initial Term and Renewal Term are referred to herein collectively as the "Term."

3. **Duties**.

a. Physician agrees to provide Services to Baptist Patients (as defined below) and agrees to work primarily at the Practice and at other locations designated by Baptist and mutually agreed upon by the parties. For purposes of this Agreement, "Baptist Patients" shall refer to all patients for whom a physician employed or engaged by Baptist at the Practice

Package:000011 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000011 of 000036

performs or has performed Services, whether at the Practice sites or elsewhere, during the course and scope of Physician's employment by Baptist, notwithstanding that some or all of such Baptist Patients may have received Services from Physician prior to Physician's employment by Baptist, or from another employed or engaged physician or other employee of the Practice. As an employee of Baptist, Physician agrees to render Services solely and exclusively to Baptist Patients.

b. Physician understands that Physician will be regularly scheduled to work at least forty (40) hours per week, and at least eighty (80) hours per bi-weekly pay period, exclusive of call coverage. Physician agrees to be available to provide patient care at least five (5) days per week. Call coverage for the Practice shall be shared proportionately with other physicians employed by Baptist in the Practice, and shall include coverage shifts consisting of weekday call (Monday through Thursday), weekend call (Friday, Saturday and Sunday) and holidays. Physician shall also provide call coverage for the emergency department at Baptist Health Lexington ("**Hospital**") in accordance with Hospital's medical staff by-laws rules and regulations and in rotation with other physicians in Physician's specialty that are active members of Hospital's medical staff.

c. Baptist agrees that it will at no time knowingly issue to Physician any direction or impose upon Physician any requirements in complying with which Physician could foreseeably violate the professional ethics and mandates of Physician's profession. Physician shall at all times exercise independent medical judgment and control. Nothing in this Agreement shall be construed as giving Baptist the authority to direct Physician's practice of medicine. Physician agrees at all times to act, practice Physician's profession, and perform Physician's duties under this Agreement in accordance with such standards of professional ethics and practice, and all statutes, rules and regulations as may from time to time be applicable to Physician or to any Services that Physician may render, including any policies and procedures established by Baptist or BHS that are applicable to Physician as an employee of Baptist. Physician agrees that, except as otherwise specifically provided in this Agreement, the policies, procedures and employee handbook issued by Baptist shall not create an employment contract for a specific time or create any rights in favor of Physician.

d. If it is necessary for Physician to refer Baptist Patients to a different provider or practitioner for additional services and/or treatment, Physician agrees to refer Baptist Patients to appropriate providers and practitioners affiliated with, owned or operated by Baptist, BHS or its Affiliates (as defined below). For purposes of this Agreement, an "**Affiliate**" of an entity shall be any entity that controls, is controlled by, or is under common control with such other entity. This Section will not apply if (a) a Baptist Patient expresses a preference for a different provider or practitioner; (b) a Baptist Patient's insurer determines the provider or practitioner; or (c) such a referral is not in the Baptist Patient's best medical interests in Physician's professional judgment.

e. Physician's duties shall include the essential functions of employment set forth in **Exhibit A**, attached hereto and incorporated by reference herein, as may be amended

Package:000012 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000012 of 000036

from time to time by mutual agreement, as well as the essential duties required of a physician in private practice.

4. **Compensation and Benefits.**

a. Baptist shall pay Physician, and Physician agrees to accept, the compensation described in **Exhibit B**, attached hereto and incorporated herein by reference, for Services performed in accordance with this Agreement. Physician shall be entitled to receive those benefits customarily afforded to physician-employees of Baptist in addition to those specifically described in **Exhibit B**. These benefits are subject to change and may be modified by Baptist without modification to this Agreement, as are all benefits provided to Baptist employees, and are subject to the specific terms and conditions of the applicable policies and/or plans relating to such benefits.

b. Physician's compensation shall be periodically reviewed by Baptist throughout the Term of Physician's employment to ensure that such compensation is commensurate with Physician's productivity, is consistent with the principles of fair market value, is commercially reasonable given the Services being provided by Physician and the market in which such Services are provided. Further, in the event that Baptist determines that an adjustment to Physician's compensation is necessary as a result of such review or significant changes to the Medicare reimbursement methodology established by the Centers for Medicare and Medicaid Services ("CMS") or in order to satisfy the criteria set forth above, Physician and Baptist shall meet to discuss necessary modifications to Physician's compensation and this Agreement. In the event that the parties are unable to agree upon such modifications, Baptist or Physician may terminate this Agreement upon at least ninety (90) days prior written notice to the other party.

5. **Licenses and Medical Staff Membership.**

a. Prior to providing Services under this Agreement, Physician shall obtain, and thereafter maintain while employed, a currently valid and unrestricted license to practice medicine in the Commonwealth of Kentucky. Furthermore, Physician shall hold a currently valid and unrestricted Drug Enforcement Administration ("DEA") registration number. Physician agrees to provide promptly a copy of said license and DEA registration to Baptist upon request. Physician agrees to deliver immediately to Baptist, upon receipt, a copy of any decision or action adverse to Physician's DEA registration number or Physician's license to practice medicine in Kentucky or in any other state. Baptist will assume financial responsibility and provide the administrative assistance required to maintain such license and registration.

b. As an employee of Baptist, Physician shall maintain medical staff membership and privileges Hospital and at other hospitals and health care facilities as reasonably requested by Baptist and mutually agreed upon by Baptist and Physician. Baptist will assume financial responsibility and provide the administrative assistance required to acquire such membership and privileges. Physician is not prohibited from maintaining such status at any other hospital and shall provide, upon receipt, a copy of any decision or adverse action to

Package:000013 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000013 of 000036

Physician's medical staff membership or privileges at any hospital or health care facility. Physician shall further immediately notify Baptist, in writing, if Physician is subject to a focus review (or equivalent peer review investigation or inquiry) at any hospital where Physician maintains medical staff privileges, including but not limited to, a BHS hospital. Physician represents and warrants that Physician's medical staff privileges have not been suspended or terminated at any hospital where Physician maintained medical staff privileges at any time and that Physician is not subject to a focus review (or equivalent peer review investigation or inquiry) at any hospital where Physician maintains medical staff privileges, including but not limited to, a BHS hospital.

c. Physician shall immediately notify Baptist, in writing, if Physician becomes aware of any information indicating that Physician is or may be the target, subject, or witness in any inquiry, investigation, study, or proceeding involving any agency, authority, entity, or contractor, whether governmental, public or private. This includes, but is no way limited to, inquiries, investigations, quality related reviews, studies, or proceedings, conducted by the United States Department of Justice, Federal or State Attorney Generals, Federal or State Health and Human Services agencies, drug enforcement agencies, state licensing boards, professional societies, any government sponsored health care program, including Medicare, Medicaid or other public healthcare benefit programs, and third party payors, including Managed Care Programs.

d. Physician hereby represents and warrants that Physician is not aware of any information indicating that Physician is or may be the target, subject, or witness in any inquiry, investigation, study, or proceeding involving any agency, authority, entity, or contractor, whether governmental, public or private. This includes, but is in no way limited to, inquiries, investigations, quality related reviews, studies, or proceedings conducted by the United States Department of Justice, Federal or State Attorney Generals, Federal or State Inspector Generals, Federal or State Health and Human Services agencies, State Licensing Boards, professional societies, any government sponsored health care program including Medicare and Medicaid, any private or public health care benefit programs, or third party payors, including Managed Care Programs.

6. **<u>Insurance and Cooperation</u>**.

a. Physician must be eligible at all times to be insured for professional liability insurance carrying the limits and subject to the deductibles and retention desired by Baptist. Baptist will provide professional liability coverage with limits of One Million Dollars ($1,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) in the aggregate for Services Physician performs on behalf of Baptist pursuant to and during the Term of this Agreement. Furthermore, Baptist will provide tail coverage for claims made after termination of Physician's employment, which are related to Services performed on behalf of Baptist and during the period in which Physician is employed by Baptist. Physician agrees to deliver promptly to Baptist, upon receipt, a copy of any notice of claim against Physician involving Physician's liability insurance or any adverse action, change or modification to the terms and conditions of Physician's insurance coverage.

Package:000014 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000014 of 000036

b. Physician must obtain and maintain Physician's own professional liability coverage, at Physician's own expense, for professional services performed outside the scope of Physician's employment with Baptist including, without limitation, any Outside Activities (as defined below).

c. In the event Physician becomes aware of any alleged injury arising out of the provision of Services, Physician has a duty to give Baptist written notice containing the particulars sufficient to identify the allegedly injured person, place and circumstances of the alleged incident. Further, Physician agrees to cooperate with Baptist in the conduct of lawsuits and agrees to attend depositions, hearings and trials as required by legal counsel for Baptist.

d. Physician must obtain and maintain professional liability coverage, at Physician's own expense, for services performed prior to Physician's employment with Baptist (**"Prior Acts Tail Coverage"**), unless Physician's liability coverage immediately prior to employment was occurrence-based coverage. Physician agrees to provide a certificate of such coverage to Baptist.

7. **Outside Activities**. Baptist, in its sole discretion, may authorize, in writing, Physician to engage in professional activities or services outside the scope of Physician's employment with Baptist, including but not limited to service as a consultant, lecturer, expert witness or author (**"Outside Activities"**), and to receive outside compensation for such Outside Activities. Physician shall submit a written request to Baptist to participate in Outside Activities. When Physician engages in Outside Activities, Physician is acting solely in Physician's individual capacity and not as an employee, agent or representative of Baptist, BHS or their Affiliates. Accordingly, the professional liability insurance coverage provided to Physician pursuant to this Agreement shall not cover such Outside Activities.

8. **Assignment and Billing.**

a. On behalf of Physician, Baptist will procure and maintain, and Physician agrees to assist Baptist and be subject to, contracting or participating provider status in such health maintenance organizations, preferred provider organizations, governmental plans (including Medicare and Medicaid programs), managed care plans, and any other third party payor plans or networks (collectively, **"Managed Care Contracts"**) as deemed necessary by Baptist; provided, however, that Physician cannot enter into or renew such contracting status unless Baptist authorizes such participation. Physician agrees to provide Baptist with notice of any correspondence or communication from any third party payor (including managed care plans, HMO's, PPO's and self-insured plans) concerning Physician's status as a provider participating in such payor's plans or networks. Physician agrees to cooperate with Baptist and take all required actions for the purpose of assigning or transferring to Baptist all outstanding professional service agreements (including but not limited to coverage and medical director agreements), Managed Care Contracts, including but not limited to those with health care providers, managed care organizations, governmental payors, employers, insurance companies and third party administrators, to which Physician is party for the provision of professional

Package:000015 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000015 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

services. Physician also agrees to assign to Baptist all proceeds of all fees collected and all rights to the proceeds of billings, including but not limited to all fees owed or received pursuant to Managed Care Contracts, for the professional services of Physician rendered to Baptist Patients and/or for the benefit of or on behalf of Baptist or Practice during the course of Physician's employment by Baptist. As a condition of this Agreement, Physician hereby assigns all of Physician's right to bill and receive Medicare and Medicaid payments, and Baptist will bill or arrange for billing Medicare and Medicaid for Physician's services rendered to Baptist Patients. Physician agrees to participate in any Accountable Care Organizations or clinical integration program, upon the request of Baptist.

b. The parties acknowledge that from time to time during the Physician's employment with Baptist, incentive programs may exist or be created to encourage the use of medical technology and reporting of quality indicators to improve health care, including but not limited to Medicare's e-Prescribing Incentive and Physician Quality Reporting Initiative. Furthermore, the Health Information Technology for Economic and Clinical Health ("HITECH") Act, which is included in the American Recovery and Reinvestment Act of 2009, authorizes additional reimbursement payments from Medicare and Medicaid to eligible physicians and hospitals that adopt and use certified electronic health records in a meaningful manner, as defined by the Secretary of the Department of Health and Human Services. Physician agrees to cooperate with Baptist in the participation of such incentive programs and the adoption of such technology and compliance with reporting. Physician further agrees to assign to Baptist all incentive payments received or owed from Medicare, Medicaid, and any other entities or governmental agencies responsible for administering such programs and related to Physician's participation in such programs, adoption of such technology and reporting during the course of Physician's employment by Baptist, regardless of whether such incentive payments are received during or after the Term of Physician's employment.

c. Physician will document patient records in a timely and appropriate manner in accordance with the standards of all applicable accreditation agencies, CMS, and the Hospital's medical staff bylaws. Physician acknowledges that Baptist and Hospital rely on timely and appropriate patient record documentation in order for Baptist and Hospital to submit claims for reimbursement, related to the professional medical services provided by Physician. Physician will utilize best efforts to assist Baptist and Hospital in complying with applicable rules, laws and regulations regarding billing, coding and reimbursement for professional services performed by Physician and agrees to participate in billing/coding education and training upon the request of Baptist. Physician shall be responsible for any costs and expenses, including but not limited to attorneys' fees, judgments, fines, penalties, settlements, recoupments or offsets paid by or imposed against Baptist, Hospital, or any Affiliate of Baptist or Hospital, in connection with any actual or threatened claim, action, suit, proceeding, or audit, whether criminal, civil, administrative, legislative, investigative, or other (including any appeal thereto) associated with Physician's third-party claims for reimbursement submitted prior to the Term of this Agreement.

13994.tth (BHMG) 01.11.17
Physician Employment Agreement
Ramon Thomas, M.D.
(East/Lex/OB-GYN)
Page 6 of 23

Package:000016 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000016 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

9. **Termination.**

a. Baptist shall have the right to terminate this Agreement immediately upon the occurrence of any of the following:

i. any suspension, restriction, or revocation of Physician's DEA registration number or Physician's license to practice medicine in the Commonwealth of Kentucky, regardless of the pendency of any appeal of such suspension, curtailment, or revocation;

ii. termination, limitation, or any suspension of Physician's medical staff privileges or membership at any hospital at which Physician maintains staff privileges or membership, including termination, limitation, or suspension, for any reason, of Physician's medical staff privileges or membership at Hospital or any other hospital owned or managed by BHS or any of its Affiliates; however, Physician may voluntarily relinquish Physician's medical staff privileges at hospitals where Physician no longer wishes to practice without triggering Baptist's right to termination unless the relinquishment is in lieu of disciplinary action by such hospital or its medical staff;

iii. any expulsion of, suspension of, or other disciplinary action against Physician by a professional medical organization as a result of professional misconduct or resignation by Physician from any professional medical organization under threat of disciplinary action for professional misconduct;

iv. Physician's failure or inability to qualify or continue eligibility for professional liability coverage to cover all essential functions of Physician's employment set forth in this Agreement;

v. imposition of any sanctions, including exclusion, suspension, or other limitation, relating to Physician's Medicare or Medicaid participation;

vi. Physician's permanent disability (for purposes of this Agreement, Physician shall be deemed to have a "permanent disability" if Physician meets the definition of "permanent disability" in Physician's long term disability insurance policy if such a policy is maintained by Physician and, in the absence of such a policy, Physician's disability shall be determined by a physician selected and compensated by Baptist with said physician's judgment being final and binding on the parties as to the issue of permanent disability);

vii. death of Physician;

viii. activities constituting a felony or misdemeanor involving theft, dishonesty or moral turpitude by the Physician;

Package:000017 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000017 of 000036

ix. inattention to or neglect of the duties to be performed by Physician that adversely affects patient care;

x. drug or alcohol abuse by the Physician;

xi. breach by the Physician of the AMA Code of Medical Ethics;

xii. failure to qualify for or continue as a participating provider for any managed care plans that contract with Baptist and Practice;

xiii. jeopardy of the health and/or safety of patient(s) or other employees as a result of actions or omissions of Physician;

xiv. willful or intentional noncompliance with any terms or conditions of this Agreement and/or the applicable policies and procedures of Baptist, BHS or Hospital;

xv. Physician's failure to resume job responsibilities after exhausting leave of absence permitted by applicable policies and procedures of Baptist or BHS;

xvi. Physician fails or refuses to perform or fulfill Physician's duties, obligations or covenants under this Agreement or breaches any of Physician's representations and warranties herein, which breach is not cured within ten (10) business days of Physician's receipt of written notice describing such breach in detail from Baptist; or

xvii. Physician's board certification expires without renewal or is revoked, restricted, limited or suspended in any way.

b. This Agreement may be terminated by either party for the breach by the other party of any material term of this Agreement, including but not limited to substantial failure to pay sums due under this Agreement, upon the expiration of ten (10) business days after receipt of written notice of the breach if the breach or non-performance has not been cured.

c. Baptist may terminate this Agreement upon at least sixty (60) days' written notice to Physician if the parties are unable to agree upon modifications to this Agreement necessary for Physician's compensation to comply with Section 4.b. of this Agreement.

d. Upon no less than sixty (60) days' written notice (the "Notice Period"), this Agreement may be terminated by either party, for any reason. Physician shall not take more than ten (10) days of ATO during the Notice Period, excluding ATO for holiday(s) upon which the Practice is closed. Physician shall not take time away from the Practice to attend continuing medical education during the Notice Period. If Physician fails to comply with all terms and conditions of this Agreement for the duration of the Notice Period, Physician shall pay to Baptist

Package:000018 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000018 of 000036

as liquidated damages, not as a penalty, an amount equal to sixty (60) days of Physician's then-current base compensation as set forth in this Agreement.

e. The parties may terminate this Agreement by mutual, written agreement effective as of the date mutually agreed by the parties.

f. Upon termination of this Agreement, Physician agrees to voluntarily relinquish Physician's medical staff appointment and privileges at Hospital upon request of Baptist.

g. Upon termination of Physician's employment, Physician will be entitled to the compensation earned by Physician prior to the date of termination as provided for in this Agreement. In the event of a termination pursuant to Section 9.d. above, the foregoing is conditioned upon Physician's adherence to the terms of this Agreement throughout the entirety of the Notice Period.

h. Upon termination of Physician's employment for any reason, the parties agree to cooperate in the orderly transfer of Baptist Patients treated by Physician during the course of Physician's employment to another physician associated with Baptist. In fulfillment of this obligation, the parties agree to take all steps necessary for Baptist to effect an orderly transfer of patient records and information. Such steps include, but are not limited to, assisting with the transfer of Baptist Patients to other physicians employed by Baptist or an Affiliate of Baptist and cooperating with the provision of communication to all Baptist Patients treated by Physician informing them: (i) that Physician is or will no longer be employed by Baptist, and (ii) of the name of successor physician or physicians who will be available to treat such patients at the Practice or at other sites selected by Baptist.

10. <u>Restrictive Covenant and Non-Solicitation</u>.

a. During Physician's employment and, except for those circumstances listed herein, during the period ending one (1) year after the last date of Physician's employment (the "**Restricted Period**"), and within Fayette County (the "**Restricted Territory**"), Physician shall not, directly or indirectly own, manage, operate, join, have an interest in, control or participate in the ownership, management, operation or control of, or be employed or otherwise connected with, any corporation, partnership, limited liability company, sole proprietorship or other business entity that now or hereafter:

i. offers or provides Services in actual or potential competition with the Practice; or

ii. offers any health care services offered by Baptist, BHS or an Affiliate.

b. Section 10(a)(i) and 10(a)(ii) shall not apply in the following circumstances after termination of this Agreement:

Package:000019 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000019 of 000036

i. In the event this Agreement is properly terminated by Physician as a result of Baptist's breach that is not cured as provided herein;

ii. In the event Baptist or an Affiliate ceases to offer Services in the Restricted Territory;

iii. In the event Baptist terminates this Agreement without cause;

iv. In the event this Agreement is terminated properly by Physician and Physician engages in the private practice of medicine, so long as (a) Physician is practicing as a solo practitioner or as an owner or employee of a practice that is wholly owned by licensed physicians and not managed by a separate entity; (b) Physician maintains active membership on the Hospital medical staff, unless Baptist has requested that Physician voluntarily relinquish membership as set forth herein, in which case this requirement shall not be applicable; and (c) Physician's practice does not engage in, manage, operate or own any interest in an entity that offers any health care services offered by Baptist or an Affiliate, except for such services or equipment customarily found in a private medical practice in Physician's specialty(ies);

v. In the event Physician terminates this Agreement for cause; or

vi. In the event Baptist or Physician terminates this Agreement pursuant to Section 4.b. or Section 9.c.

c. During Physician's employment and during the Restricted Period, Physician agrees to not directly or indirectly solicit, disrupt or attempt to disrupt the relationship, contractual or otherwise, between Baptist and any patient, or employee of Baptist. Physician further agrees not to, directly or indirectly:

i. solicit any person as a patient who is a Baptist Patient or who has been a Baptist Patient at any time during the previous one-year period ending with the date of the termination of employment;

ii. send announcements or publications regarding new offices or employment affiliations targeted toward patients identified herein, but mass mailings to the general public and public announcements shall be permitted;

iii. remove patient records from the Practice or from Baptist's possession, unless a patient requests the transfer of his or her records in writing, and then Physician may only obtain copies of such records during business hours; or

iv. take, copy, or distribute in any way lists of Baptist Patients.

Package:000020 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000020 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

d. Section 10(c), as it relates specifically to patients, shall not apply to those patients with whom Physician established a treatment relationship prior to the first date Physician became employed by Baptist ("Prior Patients"), so long as Physician practices as a solo practitioner or as an owner or employee of a practice that is wholly owned by licensed physicians and not managed by a separate entity, and Physician maintains active membership on the Hospital medical staff, unless Baptist has requested that Physician voluntarily relinquish membership as set forth herein, in which case this requirement shall not be applicable.

e. In the event the provisions of this Section 10 are deemed or declared by a court of competent jurisdiction to exceed the time, geographic, occupational or other limitations permitted by applicable law, then such provisions shall be reformed automatically to the maximum time, geographic, occupational or other limitation held reasonable and enforceable by such court. The invalidity or non-enforceability of any provision of this Section 10 in any respect shall not affect the validity or enforceability of the remainder of this Section 10 or of any other provision of this Agreement.

f. The parties acknowledge and agree that, since a remedy at law for any breach or attempted breach of the provisions of this Section 10 shall be inadequate, Baptist may be entitled to specific performance and injunctive and other equitable relief in case of any such breach or attempted breach, in addition to whatever other remedies may exist at law. The parties waive any requirement for the securing or posting of any bond in connection with the obtaining of any such injunctive or other equitable relief.

11. **Confidentiality of Information.**

a. Physician shall maintain the confidentiality of and safeguard all confidential information of Baptist, including without limitation, patient information, medical records, patient identifiers, policies, procedures, trade secrets, trade information, business practices, information systems, security passwords, financial information, proprietary information, Baptist's concepts, trademarks, service marks, patient lists, patients, including those generated by Physician for Baptist, computer programs, business strategies for developing new patient and new physician relationships, including physician recruitment, cost data, utilization review techniques, medical management, quality assurance protocols, patents, know-how and other proprietary processes and such proprietary information included in manuals or memoranda, as they may now exist or which may be developed during the Physician's employment (collectively referred to as "**Confidential Information**"), and shall not disclose such Confidential Information or make it available to any person or entity, or use it in any way other than as contemplated by this Agreement. Such Confidential Information of a proprietary nature that is generated by or for Baptist or an Affiliate is a valuable, special, and unique asset of any such entity's business, access to and knowledge of which are essential to the performance of the Physician's duties hereunder. Physician will not, during or after the Term of Physician's employment by Baptist, in whole or in part, disclose such Confidential Information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever; nor shall Physician make use of any such Confidential Information for Physician's own purposes or for the benefit of any person, firm, corporation or other entity (except Baptist or an Affiliate)

Package:000021 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000021 of 000036
Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

under any circumstances. Physician shall further report to Baptist any use or disclosure of Confidential Information that Physician becomes aware of that is not authorized by this Agreement. Physician's obligations to maintain and safeguard, not to disclose, and to report unauthorized disclosures of, Confidential Information shall survive the termination of Physician's employment. Physician agrees to comply with the Health Insurance Portability and Accountability Act of 1996 and regulations promulgated thereunder, to the extent applicable, as well as other applicable state and federal laws and regulations, and Baptist and Practice policies relating to the security, protection and privacy of individually identifiable health care information. In the event that Physician fails to comply with this provision, Baptist may immediately terminate this Agreement, in addition to seeking other remedies available to it at law or equity.

b. Physician agrees to keep the terms of this Agreement confidential and not disclose without the consent of Baptist any information about this Agreement to any third party, other than Physician's legal counsel, financial advisor or accountant, unless such disclosure is required by law, regulation or court order.

c. Physician will assist Baptist and its affiliated hospitals, including Hospital ("Baptist Hospitals"), in achieving Baptist Hospitals' quality, patient safety, patient satisfaction and patient experience goals in order to enhance the quality of care for patients. In furtherance of these goals, Physician agrees that Baptist Hospitals shall have access, as needed, to any and all of Baptist's quality data and records, concerning Physician, including but not limited to, outcomes data, performance indicator ratings and patient satisfaction metrics related to Physician's performance of Physician's duties under this Agreement; and Physician consents to Baptist providing such information to Baptist Hospitals. Physician further agrees that Baptist Hospitals may share with Baptist, as needed, Baptist Hospitals' credentialing, quality and peer review information, including but not limited to, Baptist Hospitals' Medical Staff Quality Committee data, performance indicator ratings and patient satisfaction metrics related to Physician's performance at Baptist Hospitals; and Physician consents to Baptist Hospitals providing such information to Baptist. Any information provided by Baptist Hospitals to Baptist or by Baptist to Baptist Hospitals about Physician as stated above, which is considered and treated as Patient Safety Work Product and is privileged and confidential, shall also be considered and treated as Patient Safety Work Product and privileged and confidential by the recipient.

12. **Professional Values and Conduct.**

a. Physician understands and agrees that Physician must act in accordance with Hospital's stated commitments to compassion, integrity and efficiency and demonstrate professionalism in all dealings with patients, patient families, Baptist and Hospital staff and Baptist and Hospital partners. The express purpose of this Section is to ensure that Baptist's and Hospital's respective missions are pursued in an appropriate, cooperative and professional healthcare environment that exhibits unwavering concern, consideration and esteem for patients, families and Baptist and Hospital staff and partners. Physician understands and agrees that failure to act consistently with these commitments and failure to demonstrate appropriate

Package:000022 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000022 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

professionalism will not be tolerated and can result in immediate termination of this Agreement. Such inappropriate behavior includes but is not limited to dismissive, intimidating, rude, abusive, degrading, demeaning or derogatory language or actions directed at patients or other Baptist or Hospital staff and partners.

b. Baptist reserves the right to implement collegial steps to address complaints about Physician that might include counseling, warnings, meetings, voluntary training and reviews. The foregoing notwithstanding, no right to collegial steps or progressive discipline exists in this Agreement. It is expressly understood and agreed that a single incident of inappropriate conduct or pattern of the same or similar inappropriate conduct may be so unacceptable that, in Baptist's sole discretion, immediate termination of this Agreement can result.

13. **Legal and Charitable Purposes**. As stated above, Baptist is entering into this Agreement in furtherance of its legal and charitable mission. In the event that any state or federal laws or regulations now existing, or subsequently enacted or promulgated, are interpreted by judicial decision, regulatory agency or legal counsel for Baptist in such a way as to indicate that the structure of this Agreement may be in violation of such laws or regulations, or, in the opinion of Baptist's counsel, may endanger Baptist's nonprofit or tax-exempt status, this Agreement shall be amended by Baptist to the maximum extent possible to preserve the underlying arrangement.

14. **Governing Law & Venue**. This Agreement is being delivered and is intended to be performed in the Commonwealth of Kentucky and shall be construed and enforceable in accordance with the laws of Kentucky. The parties hereby consent to the jurisdiction and venue of the circuit court of county in which Hospital is located and of the United States District Court for the district in which Hospital is located, and hereby waive any objection to the jurisdiction of, or the venue of any action instituted in, such courts.

15. **Assignment Prohibited**. This Agreement is personal to each of the parties hereto, and neither party may assign or delegate any rights or obligations hereunder without first obtaining the written consent of the other; provided, however, that Baptist may assign its rights and delegate its obligations hereunder to an Affiliate or a successor in interest of Baptist or BHS.

16. **Notices**. All notices required or permitted hereunder shall be in writing and shall be deemed to have been duly given if sent by registered or certified mail, postage prepaid, and return receipt requested to the parties, addressed as follows (or at such other addresses as designated by the parties from time to time):

If to Physician:

Ramon Thomas, M.D.
3181 Brighton Place Drive
Lexington, KY 40509

Package:000023 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000023 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

If to Baptist: Baptist Health Medical Group, Inc.
2701 Eastpoint Parkway
Louisville, KY 40223
Attn: President

With a copy to: Baptist Healthcare System, Inc.
2701 Eastpoint Parkway
Louisville, KY 40223
Attn: Vice President and Chief Legal Officer

17. **Waiver**. Failure to insist upon strict compliance with any of the terms, covenants, or conditions of this Agreement at any one time shall not be deemed a waiver of such term, covenant, or condition at any other time nor shall any waiver or relinquishment of any right or power herein at any time be deemed a waiver or relinquishment of the same or any other right or power at any other time.

18. **Entire Agreement**. This Agreement (including any exhibits and schedules attached hereto) contains the entire agreement between the parties concerning the subject matter contained herein and there are no other terms, covenants, obligations, or representations, oral or written, of any kind whatsoever. Any modification, addition or alteration of this Agreement must be in writing and signed by both parties.

19. **Severability**. In the event any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions shall nevertheless be binding upon the respective parties hereto with the same effect as though the invalid or unenforceable provision were deleted.

20. **Stark II Requirements**. Stark II regulations require BHS to maintain:

a. a master list of all financial relationships and contracts with physicians and their immediate family members; and

b. the national provider identification number of each physician with whom Baptist has a financial relationship.

Therefore, attached hereto, and incorporated herein, **Exhibit C** sets forth all such financial relationships, contract and national provider identification numbers.

(SIGNATURE PAGE TO FOLLOW)

13994.tlh (BHMG) 01.11.17
Physician Employment Agreement
Ramon Thomas, M.D.
(East/Lex/OB-GYN)

Page 14 of 23

Package:000024 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000024 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

**INTENDING TO BE LEGALLY BOUND,** the parties hereto have executed this Agreement as of the dates set forth below.

"Baptist"

**BAPTIST HEALTH MEDICAL GROUP, INC.**

Signed: ______________________

Stephen K. Toadvine, M.D., President

Date: 1/18/17

"Physician"

______________________

Ramon Thomas, M.D.

Date: 18 JAN 2017

Legal Approval: Tracy Lee-Huber

Date: January 13, 2017

13994.6th (BHMG) 01.11.17
Physician Employment Agreement
Ramon Thomas, M.D.
(East/Lex/OB-GYN)

Page 15 of 23

Package:000025 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000025 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

**EXHIBIT A**

**JOB TITLE:** Obstetrics and Gynecology Physician with Baptist Health Medical Group, Inc.

**REPORT TO:** President or his/her designee

**SUMMARY:** Maintains responsibility for the delivery of obstetric and gynecology services.

**DUTIES AND RESPONSIBILITIES:**

1. Provides daily physician management and treatment of patients at the Practice.
2. Provides clinical services to patients, including diagnosis, treatment and referral.
3. Participates in the establishment of and complies with Baptist policies, procedures, guidelines, and medical protocol necessary to provide physician practice services.
4. Appropriately refers patients to medical specialists.
5. Complies with Baptist policies, procedures and pricing.
6. Utilizes program forms/computer system for charting.
7. Complies with case management protocols.
8. Agrees to assist with the Practice's quality assurance and quality improvement plan.
9. Works with Baptist administration to ensure that the Practice operates in a manner consistent with appropriate medical policy and current professional standards.
10. Participates in community events and periodic marketing activities as time permits. It is understood that, on occasion, these duties may fall outside of regularly scheduled office hours.
11. Maintains appropriate telephone contact with patients, payers and pharmacies.
12. Cooperates with Baptist in the participation of incentive programs that promote the use of medical technology and reporting of quality indicators to improve health care (e.g., Medicare's e-Prescribing Incentive, Physician Quality Reporting Incentive, and HITECH), including but not limited to, the meaningful use of such technology and compliance with reporting requirements of such programs.

Package:000026 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000026 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

13. Advance Practice Clinician ("APC") Supervision – In the event that an APC is employed in the Practice, Physician will be available to the APC, in the office, after-hours and by telephone, except when using ATO. Expectations with regard to supervision of the APC will be consistent with the central principle that Physician retains ultimate responsibility for patient care. Supervision duties include but are not limited to:
    a. Continuous availability of direct communication either in person or by electronic communications between the APC and Physician;
    b. The personal review of the APC's practice at regular intervals including an assessment of referrals made or consultations requested by the APC with other health professionals;
    c. Regular chart review;
    d. The delineations of a plan for emergencies;
    e. The designation of an alternate supervising physician in the absence of the Physician;
    f. Review plan for narcotic/controlled substance prescribing and formulary compliance; and
    g. Any other duties or requirements established by law or regulation relating to the supervision of the APC now existing or as amended.
14. Provides documentation that reflects the patient services actually performed and assigns CPT codes that are reflective of such patient services.
15. Maintain availability to provide Services to Baptist Patients regardless of patient's age, payor source, or medical complexity.
16. Standards of Conduct – Physician will focus on the needs of the patient, treat hospital and office staff with respect at all times, follow the health system's chain of command when dealing with issues and problems, and demonstrate professional conduct at all times.
17. Values – Physician will demonstrate the values embraced by Hospital, Baptist and BHS to include: respect, integrity, collaboration, excellence, and stewardship.
18. Any such other duties and activities as reasonably requested by Baptist.

13994.tlh (BHMG) 01.11.17
Physician Employment Agreement
Ramon Thomas, M.D.
(East/Lex/OB-GYN)

Page 17 of 23

Package:000027 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000027 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

Package:000028 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

**EXHIBIT B**

**COMPENSATION AND BENEFITS**

**I. Compensation.**

A. **Starting Bonus.** Baptist agrees to pay Physician a one-time starting bonus in the amount of Fifteen Thousand Dollars ($15,000.00), less applicable wage withholding (the "**Starting Bonus**"). The Starting Bonus shall be paid to Physician within thirty (30) days of the Effective Date of this Agreement, contingent upon Physician first having successfully completed at least six (6) hours of E/M Coding University Modules, a compliance orientation and submission of required annual LMS and ELM education modules. To the extent that Physician fails to commence and maintain employment with Baptist for a period of one (1) year from the Effective Date, Physician shall repay Baptist the Starting Bonus prorated based on the number of pay periods remaining in the first contract year from the last date of Physician's employment hereunder. All amounts paid to Physician shall be included in Physician's income in the year received.

B. **Annual Base Compensation.** During the Term of this Agreement, Physician shall receive base compensation in the annual amount of Three Hundred Thousand Dollars ($300,000.00), prorated for any partial contract year, for providing Services under this Agreement.

C. **Productivity Bonus Compensation.** During the Term of this Agreement, Physician shall be eligible for productivity bonus compensation based upon the number of work Relative Value Units ("**wRVUs**") generated from Services personally performed by Physician. On the measurement periods specified below, Baptist will calculate the wRVUs of Services personally performed by Physician during the previous measurement period, as properly posted to the records of Baptist in accordance with Baptist's coding and billing compliance requirements and as described by Current Procedural Terminology ("**CPT**") and the wRVUs assigned to each CPT code under the CMS Resource Based Relative Value Scale, which CMS updates annually. When calculating Physician's wRVUs, Baptist shall include only those Services personally performed by Physician. The calculation shall not include the technical component of any procedure or diagnostic test or any services performed by an advanced practice clinician even if such services are billed incident to Physician's Services. Physician will receive wRVUs for Services Physician is authorized to report, which are eligible for reimbursement, and for Services for which Physician has timely completed all medical record documentation. Baptist will make adjustments to Physician's wRVUs when payment-affecting modifiers are appended to line-item claim detail. Baptist will follow prevailing market auditing and editing methodologies, including, but not limited to, the National Correct Coding Initiative edits, American Medical Association coding standards, specialty society guidance, and

Package : 000028 of 000036

other prevailing industry standards as deployed during claims processing.

During the Term of this Agreement, Physician's productivity bonus compensation will be based upon the total number of wRVUs achieved above the target of 7,692 wRVUs per contract year (the "**Annual Target**"), 1,923 wRVUs per quarterly period (the "**Quarterly Target**"), for Services personally performed by Physician, multiplied by a conversion factor of Thirty-Nine Dollars ($39.00) per wRVU ("**Conversion Factor**"). To the extent that Physician fails to meet the Quarterly Target (a "**Productivity Deficit**") during any quarterly period, the Productivity Deficit will be carried forward to the next quarterly period of the same contract year. In that regard, the total wRVUs attributable to such next quarterly period will be off-set by the Productivity Deficit from the prior quarterly period of the same contract year. The productivity bonus compensation, if any, shall be paid to Physician within forty-five (45) days of the end of the prior quarterly period.

D. **Annual Reconciliation**. Notwithstanding the above, Physician's productivity bonus compensation is subject to an annual reconciliation, as described below. Within forty-five (45) days after the end of each year of Physician's employment, Baptist will perform a reconciliation of: (i) the actual productivity bonus compensation earned by Physician based upon the total wRVUs personally performed by Physician during that year of employment; and (ii) the total of the quarterly productivity bonus payments made to Physician by Baptist during that year of employment. In performing such reconciliation, Baptist will calculate the total wRVUs personally performed by Physician for the year and multiply the number of wRVUs above the Annual Target, if any, by the Conversion Factor to determine Physician's total annual productivity bonus compensation, if any. If Physician (a) did not earn a productivity bonus based upon the annual reconciliation (i.e., a productivity bonus of $0.00); or (b) if Physician did earn productivity bonus compensation based on the reconciliation, but Physician's annual productivity bonus compensation earned is less than the total of Physician's quarterly productivity bonus compensation paid by Baptist in such year; then the difference ("**Excess Compensation**") shall be paid back to Baptist within ninety (90) days of the completion of such reconciliation. If Physician's total annual productivity bonus compensation is more than the total of the quarterly productivity bonus compensation payments made to Physician by Baptist in such year, then Baptist shall compensate Physician in an amount equal to such difference within forty-five (45) days of such reconciliation. If this Agreement is terminated or expires before the performance of the annual reconciliation, and to the extent that Physician receives Excess Compensation during such year, then Physician shall pay to Baptist the amount of the Excess Compensation received, within thirty (30) days of such termination or expiration. If Physician fails to repay any Excess Compensation in the applicable amount of time allotted above, Physician acknowledges and agrees that Baptist may deduct Excess Compensation from compensation otherwise due to Physician from

Package:000029 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000029 of 000036

Baptist and may withhold such amounts from Physician's bi-weekly paycheck until the Excess Compensation has been paid back to Baptist in full.

E. **Quality Incentive Bonus Compensation.** During each contract year of this Agreement, Physician will be eligible to earn quality incentive bonus compensation based on Physician's completion of certain quality metrics. The amount available as quality incentive bonus compensation (the "**Quality Bonus Pool**") in each contract year of this Agreement shall be Thirty Thousand Dollars Dollars ($30,000.00). All Quality Bonus Pool compensation will be paid on a pro-rata basis based on the number of quality metrics actually achieved by Physician, as evaluated and determined by Baptist (the "**Quality Bonus**"). The foregoing notwithstanding, for purposes of determining the Quality Bonus, during any contract year that E/M Coding University is a quality metric applicable to Physician, the Quality Bonus Pool for that contract year shall be reduced by the dollar amount assigned to the E/M Coding University metric prior to applying the weights attributed to the other quality metrics for that contract year. The current quality metrics are as follows:

1. **Completion of E/M Coding University** ($5,000.00). Physician will be eligible to receive the above-referenced amount of the Quality Bonus Pool by completing six (6) hours of CME using E/M Coding University Online Modules. In order to receive this portion of the Quality Bonus Pool, Physician must complete all courses and modules assigned to Physician by Baptist and provide printed proof of completion. Baptist shall compensate Physician for this portion of the Quality Bonus, if earned, within forty-five (45) days of the completion of all of the assigned courses and modules.

2. **Patient Satisfaction** (Weight = 25%). Physician will be eligible to receive this portion of the Quality Bonus Pool if Physician achieves a patient satisfaction survey score equal to or greater than 85% for the applicable contract year(s) of this Agreement.

3. **Smoking Cessation** (Weight = 25%). Physician will be eligible to receive this portion of the Quality Bonus Pool based on the percentage of patients aged eighteen (18) years or older who were screened for tobacco use one (1) or more times within twenty-four (24) months and who received cessation counseling intervention if identified as a tobacco user. In order to receive this portion of the Quality Bonus Pool, Physician must achieve a percentage rate of at least eighty-five percent (85%).

4. **Medication Reconciliation** (Weight = 25%). Physician will be eligible to receive this portion of the Quality Bonus Pool based on the percentage of visits for Baptist Patients aged eighteen (18) years or older for which Physician attests to documenting a list of current medications using all immediate resources available on the date of the visit. The documented list must include all known prescriptions, over-the-counters, herbals, and

Package:000030 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000030 of 000036

vitamin/mineral/dietary (i.e., nutritional) supplements and must contain the medications' name, dosage, frequency, and route of administration. If Physician attests to such documentation for at least 90% of visits for Baptist Patients aged eighteen (18) or older in a contract year, Physician will be eligible to receive 100% of this portion of the Quality Bonus Pool.

5. **BMI Screening and Follow-up** (Weight = 25%). Physician will be eligible to receive this portion of the Quality Bonus Pool based on the percentage of patients aged eighteen (18) or older with a BMI documented during the current encounter or during the prior six (6) months, and with a BMI outside of normal parameters, for whom a follow-up plan is documented during the encounter or during the prior six (6) months of the current encounter. If Physician satisfies this metric for at least 90% of qualifying patients in a contract year, Physician will be eligible to receive this portion of the Quality Bonus Pool.

For each contract year of this Agreement, quality metrics may be identified and defined by Baptist and, if different from those set forth above, will be provided by Baptist to Physician. Unless otherwise stated in the metric, Physician must be employed by Baptist for the entirety of the applicable measurement period (e.g., contract year if performance under the metric is measured on an annual basis) to be eligible for the applicable Quality Bonus compensation. Physician will not be required to be employed at the time of payment of any Quality Bonus earned so long as the foregoing requirement is satisfied. All Quality Bonus compensation will be paid on a pro-rata basis based on the number of metrics actually achieved by Physician as evaluated and determined by Baptist. Baptist shall use commercially reasonable efforts to compensate Physician for any Quality Bonus earned during a contract year within forty-five (45) days of the end of such contract year.

F. **Maximum Compensation**. The sum of each element of compensation paid to Physician is herein referred to as **"Total Cash Compensation."** In no event shall the Total Cash Compensation in any contract year paid to Physician hereunder exceed the then-current 75th percentile of the physician compensation report issued by Medical Group Management Association for Physician's specialty, prorated for any partial contract year.

II. **Additional Physician Benefits.**

**Allowed Time Off**. Notwithstanding Section 4.a. of this Agreement, Physician's time away from the Practice will be subject to Baptist's policy for Allowed Time Off ("ATO"), and Physician may take up to thirty-six (36) days ATO each calendar year pursuant to such policy, which will be prorated if Physician begins employment after January 1st of the calendar year. Accordingly, Physician will not accrue time for sick leave, holidays, paid time off, or continuing medical

Package:000031 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000031 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

education pursuant to the terms of Baptist's employee handbook and policies. Physician may carry over up to twenty (20) days of ATO each calendar year.

**All compensation paid to Physician is subject to all applicable city, state, federal, and other withholding taxes.**

Package:000032 of 000036

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000032 of 000036

13994.6h (BHMG) 01.11.17
Physician Employment Agreement
Ramon Thomas, M.D.
(East/Lex/OB-GYN)

Page 22 of 23

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

Package:000033 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)

# EXHIBIT C

Stark II regulations require Baptist and BHS to maintain a master list of all financial relationships and contracts with physicians and their immediate family members.[1]

Describe below all financial relationships and contracts between Baptist or BHS and Physician and with immediate family members of Physician.

| Legal Name of Party in Relationship with Baptist or BHS[2] | Describe Services Provided Under the Relationship | Begin Date and Term of Contract | If a family member, state relationship to physician |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If additional space is needed please attach additional page to contract.

The name and national provider identification number (NPI) of Physician[3]:

| Name of Physician | NPI |
|---|---|
| Ramon Thomas, M.D. | 1417025479 |
| | |
| | |
| | |

If additional space is needed please attach additional page to contract.

1. Immediate Family Member or Member of a Physician's Immediate Family means husband or wife; birth or adoptive parent, child or sibling; stepparent, stepchild, stepbrother, or stepsister; father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law; grandparent or grandchild; and spouse of a grandparent or grandchild.
2. Identify all contracts and financial relationships between Physician and Baptist or BHS, and between family members of physician and Baptist or BHS.
3. Stark II regulations require Baptist and BHS maintain, readily available, the NPI of each physician who has a financial relationship with Baptist or BHS.

13994.tlh (BHMG) 01.11.17
Physician Employment Agreement
Ramon Thomas, M.D.
(East/Lex/OB-GYN)

Page 23 of 23

Package : 000033 of 000036

Filed 20-CI-03419 11/11/2020 Vincent Riggs, Fayette Circuit Clerk

BAPTIST HEALTH
MEDICAL GROUP

2701 Eastpoint Parkway
Louisville, KY 40223

October 10, 2019

***VIA EMAIL AND CERTIFIED MAIL - RETURN RECEIPT REQUESTED***

Ramon Thomas, M.D.
3181 Brighton Place Drive
Lexington, KY 40509

RE: Termination of Employment Agreement

Dear Dr. Thomas:

This letter is to provide you notice that, pursuant to Section 9.d. of the Physician Employment Agreement entered into by and between you and Baptist Health Medical Group, Inc. (**"Baptist"**) effective on or around March 6, 2017 (the **"Agreement"**), Baptist is terminating the Agreement effective sixty (60) days from the date of this letter (the **"Notice Period"**). While you will continue to be employed by Baptist during the Notice Period, you will not be scheduled by Baptist to provide any further services under the Agreement. Baptist will continue to provide benefits, and will continue to compensate you per the terms of the Agreement, through expiration of the Notice Period. In that regard, Baptist will provide you sixty (60) days' compensation during the Notice Period, less applicable taxes and withholdings, in bi-weekly payments pursuant to Baptist's normal payroll schedule. Baptist will also provide you with a statement of calculation of such compensation for your records. Baptist's contributions for health care coverage and life insurance, if any, will continue until the end of the month in which you receive your last payment.

Additionally, Section 9.f. of the Agreement states, "[u]pon termination of this Agreement, Physician agrees to voluntarily relinquish Physician's medical staff appointment and privileges at Hospital upon request of Baptist." Pursuant to Section 9.f. of the Agreement, Baptist hereby requests that you voluntarily relinquish your medical staff appointment, membership and privileges at Baptist Health Lexington effective immediately. A form letter to this effect is attached hereto, for your convenience, to use to notify the Baptist Health Lexington Medical Staff Office.

Please be reminded that all duties and obligations under the Agreement remain; including, without limitation, your obligations to: (i) comply with all policies and procedures of Baptist and Baptist Healthcare System, Inc. pursuant to Section 3.c. of the Agreement; (ii) cooperate in the orderly transfer of patients pursuant to Section 9.h. of the Agreement; (iii) not solicit or disrupt the relationship between Baptist and any employee or patient of Baptist pursuant to Section 10.c. of the Agreement; and (iv) maintain confidentiality pursuant to Section 11 of the Agreement.

If you have any questions or concerns regarding benefits or any other human resources issues, please feel free to contact Sue Christopher, Vice President of Human Resources for Baptist Health Medical Group, Inc., at (502) 489-8654 or sue.christopher@bhsi.com.

We appreciate the service you have provided to Baptist and wish you the best of luck in the future.

Regards,

Shelley Shaughnessy
Chief Operating Officer
Baptist Health Medical Group, Inc.

cc: Catherine A. Zoeller
Vice President – Physician Integration
Baptist Health Medical Group, Inc.

Package:000034 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000034 of 000036

EXHIBIT B

October 10, 2019

Baptist Health Lexington
1740 Nicholasville Road
Lexington, KY 40503

Dear Medical Staff Office:

Please accept this letter as resignation of my medical staff appointment, membership and privileges at Baptist Health Lexington effective as of 11:59 p.m. on October 10, 2019.

Sincerely,

Ramon Thomas, M.D.

Package:000035 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000035 of 000036

7 October 2019

To whom it may concern,

I write this letter humbly requesting an audience to plead my case to remain a member of the medical staff here at Baptist Health Lexington. Regrettably, I failed to reach out to the administration in a proactive way that would have certainly gotten me the help I needed and likely resolved the problems that have now caused this disastrous situation and painful request. Unbeknownst to you, over the past 18 months, several issues have been in play that have negatively affected my relationships at home and my performance at work. Issues that have been kept quiet by me, as they were personal and quite sensitive in nature. I felt as though if I just "powered through" them, I could correct the issues—and the additional problems—they were creating. Unfortunately, I was neither insightful enough nor adequately prepared to deal with them in a way that could stop them from continuing to be problematic. Admittedly, these issues caused me to make multiple poor and detrimental decisions that impacted me personally and professionally. Thankfully, over the last 10 months, with the help of my psychologist, I've been able to slowly identify, address and resolve these issues in a way that has strengthened my most important relationships and improved my performance at work. Although I am far from finished, I believe that I've made substantial efforts to climb out of the personal and professional "holes" I created.

Baptist provides me a phenomenal opportunity to be successful physician. My practice here is flourishing and I'm seeing more patients than I ever have before. The facilities are top notch and provide an environment patients desire. Patients consistently express their complete satisfaction with my care as evidenced by their evaluations of me. I have great obstetric and surgical outcomes and few complications. I consistently reach—and routinely exceed—wRVU benchmarks. I have fantastic partners that create a collegial and supportive environment. Amazingly, these things are being accomplished DESPITE my personal issues. And I firmly believe that these things can continue to improve and grow in this environment as I continue to improve and grow.

Although I am wholly uncertain of where this decision has arisen from, I am sure there must be some other solutions outside of this abrupt and harsh course of action. I am willing to do whatever it takes to prove that the only thing needed for me to reach my potential with this hospital is for me to continue to resolve my personal issues. Once that is done, you will all be able to see that keeping me was the right decision. I look forward to the chance to speak with you collectively or individually about this so we can talk in more detail and come up with much less drastic decisions. Thank you for giving me the chance to continue righting the ship.

Sincerely,

Ramon Thomas, MD, MBA

Package:000036 of 000036
Presiding Judge: HON. JULIE M. GOODMAN (622397)
Package : 000036 of 000036

EXHIBIT C





9414 7266 9904 2967 7864 35
RETURN RECEIPT REQUESTED

U.S. POSTAGE PITNEY BOWES
ZIP 41011 $ 008.60
02 4W
0000371286 NOV. 12 2020



